BARRY HAMBY AND DEBRA HAMBY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamby v. Commissioner
Docket No. 22134-87
United States Tax Court
T.C. Memo 1990-516; 1990 Tax Ct. Memo LEXIS 569; 60 T.C.M. (CCH) 909; T.C.M. (RIA) 90516; September 26, 1990, Filed *569 Decision will be entered for the respondent. J. Larry Broyles, for the petitioners. Bonnie L. Cameron, for the respondent. GERBER, Judge. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a $ 15,384 deficiency in petitioners' 1983 Federal income tax and the following additions to tax: (1) Section 6651(a)(1) [1] -- $ 3,846; (2) section 6653(a)(1) -- $ 769.20 (plus 50 percent of the interest on the deficiency pursuant to section 6653(a)(2)); and (3) section 6661 *572 -- $ 3,846. Petitioners have conceded some of the issues raised in the notice of deficiency and the issues remaining for our consideration are: (1) Whether petitioners have substantiated and/or were away from home so as to be entitled to deduct travel, meals, and lodging expenses; (2) whether petitioners are entitled to deduct expenses in connection with activity denominated as "Barry Hamby - Personal Investment Company"; (3) whether petitioners are entitled to an Investment Tax Credit in connection with the purchase of an automobile; (4) whether petitioners are entitled to a $ 3,000 short-term capital loss in connection with their involvement in "International Dynamics, Inc."; (5) whether petitioners are entitled to moving expenses in excess of the $ 2,923 allowed by respondent; and (6) whether petitioners are liable for additions to tax under sections 6651(a)(1), 6653(a)(1) and (2), and 6661. (7) Respondent determined that petitioners are liable for interest on tax-motivated transactions under section 6621(c). Although the parties address this section in the pleadings, no mention was made of section 6621(c) in the parties' briefs. For convenience our Findings of Fact and Opinion *573 are stated separately for each issue. General Background
Findings of Fact
The parties entered into a stipulation of facts, along with exhibits, which are incorporated herein by this reference. Petitioners, who at all pertinent times herein were married, resided at Martinez, Georgia, at the time their petition in this case was filed. Petitioners filed a joint Federal income tax return with the Internal Revenue Service Center at Fresno, California, on August 17, 1984. Away From Home Expenses
Findings of Fact
Petitioner Barry Hamby ("petitioner" when used in the singular will refer to Barry Hamby) was born and raised in Greenville, South Carolina, and his parents lived there during all times pertinent to this case. After graduation from high school in 1974, petitioner enrolled in a drafting *574 course offered by a company affiliated with a large construction company in South Carolina. The curriculum was a 240-hour pipe drafting course which petitioner successfully completed. Petitioner's expertise was in process piping and drafting, which involved "isometric-view" or "orthographic" drawings of the different angles and routing of piping through buildings and plants. After completion of the course, during 1974, petitioner began his first pipe drafting job with the affiliated construction company in South Carolina. From 1974 through 1984 petitioner was employed as a piping draftsman, as follows: Month & Year
Reason for
From
To Employer/Location
Leaving
1974
8/75 Daniel International
Laid off
Greenville, SC
11/75
5/76 B.F.Shaw
Better job
Laurens, SC
5/76
2/77 Daniel International
Job approaching
Greenville, SC
termination
2/77
8/77 I.T.T. Grinnell
Job approaching
Kernersville, NC
termination
8/77
5/78 Duke Power Plant
Job approaching
Charlotte, NC
termination
6/78
7/78 International Paper
Did not like job
Mobile, AL
7/78
10/80 Bellafonte Nuclear
Job approaching
Scottsboro, AL
termination
10/80
9/81 LaSalle County Nuclear
Job problems,
Marseilles, IL
wife pregnant
9/81
1/82 Unemployed
Job offer rec'd
1/82
5/83 Comanche Peak Nuclear
Job approaching
Glen Rose, TX
termination
5/83
6/84 Diablo Canyon
To get closer to
Avila Beach, CA
Greenville, S.C.
6/84
12/84 Vogtle Nuclear --
Waynesboro, GA
*575 Beginning in 1977, petitioner's jobs were obtained through "job shops" which are similar to personnel placement firms. Job applicants submit resumes and their skills are matched with various clients of the job shop. Although individuals who obtain jobs through job shops receive higher wages, they do not receive employee benefits from the employer. Although some of petitioner's jobs lasted for more than one year, all of them were intended for shorter periods and were temporary, in that they were to terminate at the end of the project for which he was hired. Petitioner lived at his parents' home in Greenville during his first few years of employment and beginning in 1977 when his work sites were too distant, he moved away and lived in rented residences. Petitioner met and married petitioner Debra Hamby (marriage occurred on November 3, 1979) while working in Alabama. At all times pertinent, petitioners lived near or at petitioner's work sites, except for visits to his parents and the period of unemployment (1981-1982), at which times they resided in his parents' home. When visiting or staying at petitioner's parents' home, petitioners did not pay rent or contribute to the operation *576 of the household. From 1979 through 1984 petitioners lived in successively larger rented premises as the size of the family increased. Petitioners' first child was born March 29, 1982. During 1983 petitioners both maintained South Carolina driver's licenses and petitioner was registered to vote in South Carolina. Also during 1983, petitioners maintained bank accounts in Greenville, South Carolina, Cleburne, Texas, and Los Osos, California. On February 29, 1980, petitioners purchased a house located at 114 Cherry Lane Drive, Greenville, South Carolina. Petitioners purchased that house "to go back to at any given time." After purchasing the house, it was rented to third parties and remained rented during the period in question. On September 3, 1980, petitioners purchased, as an investment and for rental, a house located at 10 Crofton Drive, Greenville, South Carolina. That house was rented after purchase. Petitioners received gross rentals exceeding $ 6,500 during the 1983 taxable year. Through the 1983 taxable year, petitioners did not reside in either of the houses purchased in 1980. Opinion
Petitioners claimed $ 28,074 as employee business expenses for travel, *577 meals, and lodging in connection with petitioner's work during 1983 at nuclear power plant projects at Glen Rose, Texas, and Avila Beach, California. Respondent disallowed the entire amount for lack of substantiation and because petitioners had not shown that any amount was deductible, even if substantiated. We first consider whether the category of expenditure is deductible within the meaning of the statutory and regulatory structure of the Internal Revenue Code. If we decide that it is not deductible, it will be unnecessary to determine whether petitioners have substantiated any part of the $ 28,074 claimed. Section 162(a)(2) allows "a deduction [for] ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business." Cf. , rehearing denied . Section 262 provides that "except as otherwise expressly provided in [Chapter *578 1 (sections 1 through 1399)], no deduction shall be allowed for personal, living, or family expenses." The controversy here centers about the phrase "while away from home." More specifically, respondent argues that petitioners did not have a "tax home" from which to be away or that, proverbially, petitioners "carried their home on their backs." Generally, a taxpayer's "home," as used in section 162(a)(2), "means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located." (and cases cited therein); ; . An exception to this rule may occur where a taxpayer with a well-established tax home accepts temporary employment as opposed to indefinite employment elsewhere. . In the setting of this case, respondent does not argue that petitioner's jobs were indefinite, but that he had no "established tax home" from which to be away within the meaning of section 162(a)(2). *579 In , we held that "employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home. ." In , we analyzed the purpose of section 162(a)(2) and the "away from home" principle, as follows: The purpose of the "away from home" provision is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses. ; (C.A. 9, 1962). The "tax home" doctrine is directed toward accomplishing this purpose. In effect, it asks the question whether in a particular case it is reasonable to expect the taxpayer to maintain a residence near his trade or business and thereby incur only one set of living expenses, which are of course nondeductible under section 262. If it is reasonable so to *580 expect, as where a taxpayer has only one post of duty, which is permanent, then if he in fact chooses to maintain his residence elsewhere and incur living expenses near his trade or business as well, the duplication of expenses thereby resulting arises not from the needs of his business but from the taxpayer's personal choice. * * * Implicit in the concept "away from home" is that a person has a "home." Accordingly, a person who has no principal place of business or permanent home is considered an itinerant and is never considered to be "away from home." , affg. a Memorandum Opinion of this Court; . In Deamer the taxpayer was employed as a contractual consultant engineer in the aircraft industry. Generally, he worked for different contract service firms on short-term assignments at various client companies. During 1969 through 1981, Mr. Deamer was employed at about 9 locations and each term of employment generally lasted about 8 to 12 months. At times when he was unemployed or away on leave from his employment, Mr. Deamer *581 always returned to New York or New Jersey and on some of those occasions spent time at a residence owned by Mr. Deamer's parents. None of Mr. Deamer's employment during the year in issue was in the New York City area, near where he owned a house. Additionally, the house was rented during the period in question. We find this case to be substantially indistinguishable from Deamer. Here petitioner worked in his "hometown" after high school and his specialized pipe drafting course. During that time he lived with his parents in their home. After 1977 petitioner moved away from his hometown area and engaged in temporary jobs, generally at nuclear power plants in various locations around the country. Petitioner met and married petitioner wife in Alabama and they continued to live together through the year in question at rented premises near petitioner's work sites. Although petitioners, during 1980, purchased two single family homes in Greenville, South Carolina, both were rented and petitioners, through the 1983 year, had not lived in either home. Petitioners purchased one of the two homes with the intent to make it their residence some day. On occasions when petitioner was *582 unemployed or visited Greenville, South Carolina, he would reside with his parents in the parents' residence. Petitioner's work pattern from the late 1970's up to the 1983 taxable year reflected that he was an "itinerant" within the meaning of the concept of "tax home" and "away from home." The 1983 taxable year was no different in that petitioner was employed and leased living premises in Texas and California. Accordingly, we find that petitioners are not entitled to deduct the $ 28,074 as employee business expenses for travel, meals, and lodging in connection with petitioner's work during 1983. "Barry Hamby - Personal Investment Company"
Findings of Fact
Petitioners, in the boxes labeled "Your occupation" and "Spouse's occupation," on the first page of the 1983 Federal income tax return, placed the words "Personal Investment Co." Petitioner claimed the following expenses on the 1983 return in connection with an activity denominated "Barry Hamby - Personal Inv. Co.": Advertising -- $ 4; depreciation -- $ 4,761; dues and publications -- $ 40; legal and professional services -- $ 35; supplies -- $ 27; travel and entertainment -- $ 329; and utilities and telephone *583 -- $ 66. The total of these items, $ 5,262, was claimed as a deduction from gross income under the category "Business income or (loss) (attach Schedule C)" on line 12 of the first page of the 1983 return. Respondent disallowed the entire $ 5,262 with the explanation that petitioners had not substantiated any of the claimed amount and because petitioners had not shown that the expenses, if incurred, were incurred in the carrying on of a trade or business, for the production of income, or an activity undertaken for a profit. In connection with the $ 4,761 in depreciation claimed regarding an automobile, petitioners claimed an investment tax credit. Opinion
Petitioners bear the burden of proving that they were engaged in a particular business activity and the amount of expenditures. ; Rule 142(a). The record in this case does not reflect the type or nature of the business activity or that the expenditures claimed by petitioners are ordinary and necessary within the meaning of section 162. On brief petitioners, in a "broad brushed manner," merely argue that they are entitled to these deductions under section 162 *584 or 212 (for a business or in connection with the production of income). In this connection, the majority of the $ 5,262 is composed of $ 4,761 in depreciation claimed for an automobile. Based on the record, it appears that petitioners' sources of income were from wages, interest, and rental of the two residences in South Carolina. We have already found that petitioners are not entitled to claimed meals, travel, and lodging in connection with that employment. No other reason for deducting the expenses or depreciation in connection with a business or for-profit activity involving an automobile has been shown by petitioners. Accordingly, we hold that petitioners have not shown that they are entitled to deduct $ 5,262 in expenses or investment tax credit in connection with "Barry Hamby - Personal Investment Company" or any other activity engaged in by petitioners during 1983. "International Dynamics, Inc."
Findings of Fact
Petitioners claimed $ 4,565 as a short-term capital loss in connection with "International Dynamics, Inc." (IDI), but only $ 3,000 was deducted in 1983 because of the limitation of section 1211. Petitioner described his involvement with IDI *585 as one where he entered into a contract under which he assigned or turned his paycheck over to IDI, who in turn transferred it through other companies, including one in Canada, after which 90 percent of the paycheck was eventually returned as a "gift" which was allegedly not taxable. Although petitioners did not take the position that the 90-percent portion was a gift for 1983, they claimed the 10-percent portion as a $ 4,565 short-term capital loss on their return. Opinion
We addressed this same arrangement in , and found it to be an anticipatory assignment of income and not deductible regarding the 10-percent portion. In the setting of this case, we are somewhat puzzled about petitioners' claim of a short-term capital loss. In order to have a capital loss or gain one must sell or exchange a capital asset. Petitioners have not shown that their involvement with IDI was, in any manner, a capital asset within the meaning of section 1221. Additionally, petitioners have not shown that they are otherwise entitled to a deduction or loss with respect to the $ 4,565. Accordingly, we hold that petitioners are *586 not entitled to claim a loss for 1983 in connection with their involvement with IDI. Moving Expenses
Findings of Fact
Petitioners claimed $ 5,666 as moving expenses under section 217. Respondent allowed $ 2,339 paid to a contract carrier, $ 135 for mileage between new residences, and $ 449 for temporary living expenses for a total of $ 2,923. Petitioners claimed that they had substantiation for the difference between the $ 2,923 allowed by respondent and the $ 5,666 claimed, but that the documentation had been turned over to the tax preparer and that the tax preparer then became involved in a criminal case of some type and the records were not returned. At trial petitioners presented no evidence, documents, or testimony concerning the items disallowed by respondent. Opinion
Petitioners have the burden of showing that they are entitled to moving expenses in excess of that allowed by respondent. ; Rule 142(a). Petitioner testified about the documentation in question but did not explain or detail the items of expenditure that respondent disallowed. Petitioners have failed to meet their burden of proof and *587 we hold that they are not entitled to more than the amount allowed by respondent for moving expenses. Additions to Tax - Sections 6651, 6653, and 6661
Findings of Fact
Petitioners' 1983 Federal income tax return is stamped as received by the Internal Revenue Service Center at Fresno, California, on August 17, 1984. The return was subscribed by petitioners on August 12, 1984. Petitioners' 1983 return is shown as having been prepared by a tax preparer. Additionally, petitioner testified that he sought advice concerning some of the items claimed on their return. In particular, petitioner had been involved with "International Dynamics, Inc." for 1981, 1982, and 1983 and had asked an accountant about involvement prior to claiming the amounts on a return. Presumably, such advice was sought and received at or about the time the 1981 return was filed. Opinion
Petitioners' 1983 Federal income tax return was due April 15, 1984, and was not filed until August 17, 1984. Petitioners presented no evidence showing reasonable cause for the delinquent filing and they are accordingly liable for the addition to tax under section 6651(a)(1). ; *588 . Under section 6653(a)(1) petitioners would be liable for an addition to tax of 5 percent of the underpayment if any part of their underpayment is due to negligence or intentional disregard for the rules and regulations. Further, petitioners under section 6653(a)(2) would be liable for an addition to tax of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Here petitioners argue that they relied upon their tax preparer and had consulted professionals concerning certain of the items deducted on their return. Petitioners have failed to come forward and substantiate substantial deductions claimed on their return. Further, we have considered their involvement with International Dynamics, Inc., and their attempt to claim the 10-percent portion as a capital loss after apparently recognizing that the transaction was not proper. Moreover, their failure to timely file may be considered as part of their pattern in this case to disregard the rules and regulations. , affd. . *589 Accordingly, we find petitioners liable for additions to tax under section 6653(a)(1) and (2). Finally, section 6661 [2] provides for an addition to tax for a substantial understatement of income tax. Respondent determined a section 6661 addition for substantial understatement. Petitioners simply argue that the addition to tax does not apply. Petitioners have not shown that they had substantial authority, or that there was adequate disclosure, or that a waiver was requested and, if so, whether respondent abused his discretion in denying such request. Accordingly, we hold that petitioners are liable for an addition to tax under section *590 6661. Section 6621(c) Additional Interest on Tax-Motivated Transactions
The final issue is the interest imposed on tax-motivated transactions imposed by section 6621(c). [3] The increased rate of interest is 120 percent of the statutory rate imposed on underpayments. Sec. 6621(c)(1). The underpayment attributable to the transaction must exceed $ 1,000. We must decide whether the increased rate of interest applies to any of the adjustments determined *591 by respondent. A review of the categories under section 6621(c)(3)(A) reveals that none of those is applicable in this case. The Commissioner has the authority, however, to specify other types of transactions that will be treated as tax-motivated. Sec. 6621(c)(3(B). The Secretary promulgated temporary regulations, sec. 301.6621-2T, Temporary Proced. and Admin. Regs., (Dec. 28, 1984). A review of the tax-motivated transactions set forth in the temporary regulations does not reveal one that fits any of the disallowed items considered in this case. We note that neither party briefed this point or alluded to the possibility that it remained in issue. In view of the foregoing, we hold that the items considered in this case are not tax-motivated transactions within the meaning of section 6621(c) and the additional interest does not apply. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Section references are to the Internal Revenue Code of 1954, as amended and in effect for the 1983 taxable year. Rule references are to this Court's Rules of Practice and Procedure.↩
2. Sec. 8002(b) of the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874, 1951, increased to 25 percent the addition for substantial understatement, effective for additions assessed after Oct. 21, 1986. Because the addition will be assessed after that date, the 25-percent rate applies. .↩
3. Prior to the Tax Reform Act of 1986, subsec. (c) was designated subsec. (d). Sec. 1511(c), Pub. L. 99-514, 100 Stat. 2085, 2744. The additional interest applies only after Dec. 31, 1984, notwithstanding that the transaction was entered into prior to that date. , affd. per curiam without published opinion . Sec. 6621(c) was repealed as of Dec. 31, 1989, by sec. 7721(b) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106.↩